UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BRIDGET RADMER and<br>KIMBERLY RADMER,<br><br>                    Plaintiffs,<br>v.<br><br>ROYAL NEIGHBORS OF AMERICA,<br><br>                    Defendant. | Case No. 15-CV-770-JPS<br><br><br><br>ORDER |

        In this civil suit, Plaintiffs Bridget Radmer and Kimberly Radmer ("the Radmers"), allege breach of contract and bad faith insurance claims against Defendant Royal Neighbors of America ("Royal Neighbors") for denying them benefits under a life insurance policy issued to their mother, Irene Bramm. (Docket #1-2). This matter comes before the Count on Royal Neighbors' motion for summary judgment filed on May 31, 2016. (Docket #17). On June 24, 2016, the Radmers filed their opposition (Docket #24) and, on July 2, 2016, Royal Neighbors filed its reply (Docket #27). On July 9, 2016, the Radmers filed a motion to file a surreply. (Docket #30). This matter was recently reassigned to this branch of the Court on July 20, 2016, due to the unavailability of Judge Rudolph T. Randa.

        To begin, the Court will deny the Radmers' motion to file a surreply. The Local Rules do not allow for a surreply without leave of the Court, and, upon reviewing the parties' supporting materials, the Court has determined a surreply is unnecessary in this instance. As such, the motion for summary judgment is fully briefed and ready for disposition. As discussed in detail below, the Court will grant the motion as to the bad faith claim and deny the motion on the breach of contract claim. Material issues of fact exist as to the breach of contract claim, and this matter will, therefore, proceed to trial.

1.  FACTUAL BACKGROUND

This case involves a dispute surrounding a life insurance policy Royal Neighbors issued to Irene Bramm in 2013. Ms. Bramm is now deceased, and the Radmers, Ms. Bramm's daughters, bring this action as beneficiaries of the policy. (DPFF ¶¶ 21-22).[1] The parties agree on the majority of the background facts and the Court will note any discrepancies when necessary.

1.1  Relevant Medical History

Ms. Bramm consulted Dr. Jeanne Palmer, an oncologist, on August 11, 2010, upon the advice of her primary doctor because of elevated protein levels in her body. (DPPF ¶ 1). Dr. Palmer is a physician at Froedtert and the Medical College of Wisconsin Cancer Center. (PPFF ¶ 44). On September 15, 2010, Dr. Palmer noted that a bone marrow biopsy on Ms. Bramm contained "evidence of lymphoplasmacytic lymphoma" within the bone marrow. (DPPF ¶ 2).[2] Lymphoma is a form of cancer. (DPFF ¶ 3). Dr. Palmer noted that Bramm's elevated levels did "not appear to be resulting in symptoms" but they would need to do "watchful waiting" and "follow up with repeat labs in 3 months." (DPFF ¶ 4).

On March 2, 2011, Dr. Palmer noted that Ms. Bramm "is a 55 year old female with Lymphoplasmacytic lymphoma/Waldenstrom's macroglobu-linemia who comes in for follow up." The doctor recommended a follow-up visit in three months and lab work one week prior to the visit. (DPFF ¶ 5).

---

[1] The cited facts are from the parties' proposed findings of fact and responses, unless otherwise indicated. (Docket #19, #24, #29) (defendant's proposed findings "DPFF" and plaintiffs' proposed findings ("PPFF").

[2] The Court notes that there remains some uncertainty as to the exact date of this incident. Some records indicate it occurred on September 22, 2010. This uncertainty, however, is immaterial because the parties agree that it happened in September 2010, regardless of the exact date. (Pls' Response to DPFF ¶ 2).

On either June 1, 2011, or June 3, 2011, Dr. Palmer reviewed Ms. Bramm's lab results and noted that Ms. Bramm "is a 55 year old female seen in follow up for Lymphoplasmacytic lymphoma/Waldenstrom's macroglobulinemia." The doctor again recommended a follow-up visit in three months and lab work one week prior to the visit. (DPFF ¶ 6).[3]

On September 7, 2011, Dr. Palmer reviewed Ms. Bramm's lab work during an office visit. Dr. Palmer created a progress note which stated "Date of service: 9/7/2011 Diagnosis: Lymphoplasmacytic lymphoma/ Waldenstrom's macroglobulinemia." (DPFF ¶ 7). The parties dispute whether the term "diagnosis" here refers to the September 2010 diagnosis or whether the diagnosis occurred that day. (Pls' Response to DPFF ¶ 7). On December 14, 2011, Dr. Palmer again saw Ms. Bramm and reviewed her lab results. During the visit, Dr. Palmer created a note which stated "Date of service: 12/14/2011 Diagnosis: Lymphoplasmacytic lymphoma/ Waldenstrom's macroglobulinemia." The medical record further noted "Assessment and Plan: 1. Lymphoplasmacytic lymphoma/Waldenstrom's macroglobulinemia… 6. She will follow up with a clinic visit in 6 mo, and labs one week prior." (DPFF ¶ 8).

On June 29, 2012, Dr. Palmer reviewed Ms. Bramm's lab test results. Her medical record stated "Date of service: 6/29/2012 Diagnosis: Lymphoplasmacytic lymphoma/Waldenstrom's macroglobulinemia." The medical record further noted "Assessment and Plan: 1. Lymphoplasmacytic lymphoma/Waldenstrom's macroglobulinemia… 4. She will follow up with a clinic visit in 6 mo, and labs one week prior." (DPFF ¶ 9).On December 12,

---

[3]The Radmers believe this visit occurred instead on June 1, 2011. (Pls' Response to DPFF 6). This discrepancy, however, is immaterial to the issues presented on summary judgment.

2012, Dr. Palmer reviewed Ms. Bramm's lab work. The medical record stated "Date of service: 12/12/2012 Diagnosis: Lymphoplasmacytic lymphoma/Waldenstrom's macroglobulinemia." The medical record further noted "Assessment and Plan: 1. Lymphoplasmacytic lymphoma/ Waldenstrom's macroglobulinemia … 4. She will follow up with a clinic visit in 6 mo, and labs one week prior. She is to contact the BMT team with any change in clinical status or concerns." (DPFF ¶ 10).

On July 5, 2013, Dr. Palmer's notes state that Ms. Bramm was seen by Dr. Carlos Arce-Lara, who reviewed Ms. Bramm's lab test results. The "Hematology and Oncology Follow up note" stated "Date of service: 7/5/2013 Diagnosis: Lymphoplasmacytic lymphoma/Waldenstrom's macroglobulinemia." The medical record further noted "Ms. Bramm is a 55 year old female with "Lymphoplasmacytic lymphoma/Waldenstrom's macroglobulinemia who comes in for follow up." Dr. Arce-Lara recommended that she "follow up with a clinic visit in 6 mo, and labs one week prior." (DPFF ¶ 11). The parties agree that Ms. Bramm was never treated for internal cancer. (PPFF ¶ 16).

### 1.2 The Insurance Policy

On August 6, 2013, Ms. Bramm applied for a life insurance policy with Royal Neighbors through an agent named Ryan Reilly ("Reilly"). (DPFF ¶ 12). The parties dispute whether Reilly was an independent agent or an agent of Royal Neighbors. (Pls' Response to DPFF ¶ 12). Ms. Bramm applied for what is called a "simplified issue life insurance policy" in the sum of $25,000.00. (PPFF ¶ 4). At the time Ms. Bramm signed this application, she replaced a $10,000.00 policy in effect that Reilly had processed for her about a month before. (PPFF ¶ 8).

During their meeting, Reilly read a series of application questions to Ms. Bramm and he filled out the answers. (PPFF ¶ 6). The parties dispute whether Ms. Bramm's daughter, Bridget Radmer, was present during the meeting; Reilly asserts he has no recollection of her in the room whereas Bridget Radmer testified she was present. (PPFF ¶ 9 and Def's Response).

Immediately above question 2 in Part 2, Section 2, entitled "Medical Questions" the following statement appears in bold and italic type set: "*If any answer to questions 2 through 7 is Yes, the Proposed Insured is not eligible for ANY coverage.*" (DPFF ¶ 13). Among other questions, the Application asked Ms. Bramm:

> 6. During the past 24 months, has the Proposed Insured been diagnosed as having, or been treated for:
>
>     a. Internal Cancer, Melanoma, or Leukemia?

(DPFF ¶ 14). In response to Question 6.a on the application, the box was checked "no." The parties dispute whether it was Reilly or Ms. Bramm who checked the box. (DPFF ¶ 15 and Pls' Response). Additionally, the application contained a statement above Ms. Bramm's signature that stated "Agreement/Disclosure: I have read this application for life insurance including any amendments and supplements and, to the best of my knowledge and belief, all statements are true and complete." (DPFF ¶ 16). Additionally, it stated:

> I also agree that:
>
> • My statements in this application and any amendment(s), paramedical exam, and supplement(s) are the basis of any certificate issued .

> - No information will be deemed to have been given to Royal Neighbors unless it is stated in this application and amendment(s), paramedical/medical exam, and any supplement(s).

(DPFF ¶ 17). In addition to these written statements, Ms. Bramm verified her answers to the questions in a recorded telephone call with Management Research Services, Inc., a third party company which verifies an applicant's answers to the application questions. (DPFF ¶ 18).

Bridget Radmer testified that Ms. Bramm made her medical conditions known to the agent, Reilly, prior to signing the application. (PPFF ¶ 10). In contrast, Royal Neighbors maintains that Ms. Bramm made no mention of lymphoma at the time of signing the application; specifically, Bridget Radmer testified only that her mother told the agent that "she had been diagnosed with cancer more than 24 months before the date of the application." (Def's Response to PPFF ¶ 10). Bridget Radmer further testified that Reilly told her mother to answer question 6 "no." (PPFF ¶ 12). Royal Neighbors disputes these assertions, however, and Reilly maintains that Bridget Radmer was not present at this meeting. (Def's Response to PPFF ¶ 12).

On September 10, 2013, Royal Neighbors issued a Whole Life Insurance Policy, certificate number 10263425 ("the Policy") to Ms. Bramm.[4] Ms. Bramm's application became part of the Policy pursuant to the "Entire Contract" provision. (DPFF ¶ 20). Royal Neighbors did no underwriting prior to issuing the Policy and Ms. Bramm gave authorization to investigate any of her medical history. (PPFF ¶ 23)

---

[4] The Court notes that the cited proposed finding of fact actually states that Royal Neighbors issued the policy to a "Ms. Radmer." However, the Court believes this to be only a typographical error in light of the parties' submissions and arguments.

### 1.3 Denial of the Policy Claim

On February 5, 2014, Ms. Bramm died. (DPFF ¶ 22). The death certificate listed "cerebellar hemorrhage" as her immediate cause of death. (DPFF ¶ 23). On or about February 6, 2014, Royal Neighbors received notice of Ms. Bramm's death from the agent, Reilly. (DPFF ¶ 24). On February 21, 2014, Kimberly Radmer, as a beneficiary of the Policy, signed a Statement of Claimant, with a completed "Attending Physicians and Hospital Information" form listing—"Dr. Jeanne Palmer, Hematology (Cancer Treatment)." Because the Policy had been in force for less than two years, Royal Neighbors sought review of Ms. Bramm's medical records. (DPFF ¶ 26).

On April 24, 2014, Royal Neighbors reviewed the initial medical records received, and determined it would need additional records from Dr. Palmer. (DPFF ¶ 28). Royal Neighbors received the medical records from Dr. Palmer on May 16, 2014. (DPFF ¶ 29). On June 18, 2014, Royal Neighbors made an initial determination to deny the claim. (DPFF ¶ 30). Royal Neighbors informed the Radmers that Ms. Bramm answered "no" to the question of whether she had been diagnosed as having, or been treated for Internal Cancer, Melanoma, or Leukemia during the past 24 months. (DPFF ¶ 31). Royal Neighbors explained that it believed that Ms. Bramm had been diagnosed as having internal cancer during the applicable time frame. (DPFF ¶ 32). Royal Neighbors further explained that if the "true facts" had been disclosed in the application, Royal Neighbors would not have issued the Policy. (DPFF ¶ 33).

On July 31, 2014, Royal Neighbors sent a final denial letter to the Radmers and returned the premium checks. (DPFF ¶ 34). The premium refund checks were cashed, however, the parties dispute whether the

Radmers cashed the checks. The Radmers maintain that Attorney Sarah Snyder deposited the checks into the law firm trust account and sent a letter to Royal Neighbors stating "this is not to be construed as acceptance of your denial but rather to prevent the checks from going stale and having to possibly be reissued." (Pls' Response to DPFF ¶ 35). On November 25, 2014, Attorney Sarah Snyder informed Royal Neighbors that Ms. Bramm had answered question 6 "no" based on the guidance of the its agent, Reilly, and that Bridget Radmer was present during this exchange and heard this discussion. (PPFF ¶ 41).

On May 8, 2015, Bridget Radmer and Kimberly Radmer filed this suit in Washington County Circuit Court, alleging Royal Neighbors has breached it contract to pay life insurance benefits and acted in bad faith in doing so. (Docket #1-2). On June 25, 2015, Royal Neighbors removed the case to this branch of the Court. (Docket #1).

2.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

3. DISCUSSION

Royal Neighbors' motion for summary judgment argues that: (1) it properly rescinded Ms. Bramm's insurance policy because she made a material misrepresentation on her application; and (2) the bad faith claim must be dismissed for the same reason or, alternatively, that it had a reasonable basis for denying the insurance claim. (Docket #17). The Radmers oppose the motion and argue that both claims involve factual disputes that should be decided by a jury. (Docket #23). As discussed below, the Court finds that: (1) material issues of fact preclude summary judgment on the breach of contract claim; and (2) Royal Neighbors is entitled to summary judgment on the bad faith claim.

3.1 Breach of Contract

Royal Neighbors argues it cannot be liable for the breach of contract claim because it was entitled as a matter of law to rescind Ms. Bramm's life insurance policy because she made a material misrepresentation on her policy application. Specifically, Royal Neighbors argues that Ms. Bramm made a material misrepresentation when she denied that she had been

diagnosed as having internal cancer within the 24 months preceding the application. (Def's Opening Br. at 7, Docket #18).

Because the policy involved in this suit was issued in Wisconsin, Wisconsin law governs. *Lexington Ins. Co. v. Rugg & Knopp*, Inc., 165 F.3d 1087, 1090 (7th Cir. 1999); *Kremers–Urban Co. v. Am. Employers Ins. Co.*, 119 Wis.2d 722, 351 N.W.2d 156 (1984). Wis. Stat. § 631.11(1)(b) sets forth the conditions under which an insurer may rescind a policy on the basis of a misrepresentation by the insured:

> (b) Misrepresentation or breach of affirmative warranty. No misrepresentation, and no breach of an affirmative warranty, that is made by a person other than the insurer or an agent of the insurer in the negotiation for or procurement of an insurance contract constitutes grounds for rescission of, or affects the insurer's obligations under, the policy unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless any of the following applies:
>
> 1. The insurer relies on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive.
>
> 2. The fact misrepresented or falsely warranted contributes to the loss.

Put more succinctly, an insurer is entitled to rescission where it can demonstrate: "'(1) that (a) a misrepresentation was made *and* (b) the person making it knew, or should have known, that it was false; *and* (2) either (a)(i) the insurer relied on the misrepresentation, and (ii) that misrepresentation was material, or (iii) it was made with intent to deceive; *or* (b) the misrepresented fact contributed to the loss.'" *La Plant v. Household Life Ins. Co.,* No. 12-C-684, 2013 WL 3341054, at *2 (E.D. Wis. July 2, 2013) (quoting *Pum v. Wis. Physicians Serv. Ins. Corp.*, 2007 WI App 10, ¶¶ 9, 13, 298 Wis.2d

497, 727 N.W.2d 346 (Ct. App. 2006) (emphasis in original). In looking to "whether a statement was false, and whether the person making the statement knew, or should have known, that the statement was false," these issues "are questions of fact for the jury." *Pum*, 2007 WI App 10, ¶ 12, "If there are disputed material facts as to *any* of these elements, or if differing inferences as to these elements can be drawn from undisputed facts, [the insurer] is not entitled to summary judgment." *Pum,* 2007 WI App 10, ¶ 9. (emphasis added).

The Radmers argue that Ms. Bramm did not make a misrepresentation on her insurance policy because she was not diagnosed with cancer within the 24-month period prior to her policy application. The question on the policy application asked whether Ms. Bramm had "been diagnosed as having, or been treated for" cancer within 24 month. The issue here is the significance of the phrase "diagnosed as having" in the context of this question.

In short, the Radmers argue that Ms. Bramm was diagnosed with lymphoma only once, in September 2010, which was 35 months prior to filling out the application, and well outside of the 24-month period. In support, they look to various dictionary definitions of the term "diagnosis." For example they refer to: (1) Merriam-Webster dictionary's simple definition as "the act of identifying a disease, illness or problem by someone examining someone or something"; and (2) Black's Law Dictionary: "1. The determination of medical condition by physical examination or by study of its symptoms. 2. The result of such an examination or study." (Pls' Opp. at 5-6, Docket #23). As such, they argue that "a diagnosis is made at one time," and Ms. Bramm's lymphoma diagnosis occurred in September 2010. As to Ms. Bramm's multiple follow-up visits within the relevant 24-month time

frame, the Radmers argue that those visits did not involve any new diagnosis, but rather only discussed her initial diagnosis from September 2010. (Pls' Opp. at 11-12, Docket #23). In light of this reasoning, the Radmers argue that Ms. Bramm did not make a false statement on her application because her cancer diagnosis did not occur within 24 months of her application and she was not receiving any treatment for the cancer. Based on this interpretation, the Radmers argue a jury could find that Ms. Bramm answered the question correctly or at least had reason to believe she answered the question correctly.

In contrast, Royal Neighbors argues that Ms. Bramm's statement on the policy application was false because she visited her oncologist at least 5 times during the relevant 24-month period and received a cancer diagnosis at each visit. In short, Royal Neighbors does not view Ms. Bramm's cancer diagnosis as a one time occurrence, but instead views it as something that occurred on multiple occasions. Ms. Bramm submitted laboratory testing prior to visits and her oncologist took a medical history and performed a physical examination during each visit. Royal Neighbors argues that the oncologist used this information to render a cancer diagnosis at each follow-up appointment. Royal Neighbors argues that Ms. Bramm would not have repeatedly visited the oncologist unless it was to receive a current diagnosis to assess her current state of health. (Def's Reply at 6, Docket #27). Royal Neighbors further argues that Ms. Bramm should have known her answer on the application was false. As a licensed nurse, Ms. Bramm had more medical knowledge than an average person and would have known she had been diagnosed with cancer during the 24-month time frame.

Here, the Court will start and end its discussion with the first elements of the misrepresentation analysis because it finds that factual issues preclude

Page 12 of 17
Case 2:15-cv-00770-JPS   Filed 08/12/16   Page 12 of 17   Document 33

summary judgment. Wisconsin law makes clear that "whether a statement was false, and whether the person making the statement knew, or should have known, that the statement was false, are questions of fact for the jury." *Pum*, 2007 WI App 10, ¶ 12. Thus, to survive summary judgment, the Radmers need only show that differing inferences can be drawn from the elements such that a reasonable jury could find in their favor. *See id.*, ¶ 9.

The parties' competing arguments regarding the meaning of the term "diagnosis" raises sufficient doubt as to whether Royal Neighbors was entitled to rescind the contract. Certainly, dictionary definitions "can shed only partial light on the reasonable understanding of an insured with regard to words in the context of a particular insurance policy," *Sprangers v. Greatway Ins. Co.*, 182 Wis.2d 521, 537, 514 N.W.2d 1, 7 (1994). However, the Radmers' reliance on the various definitions shows that a reasonable jury could find that Ms. Bramm was not "diagnosed" with cancer within the 24-month period prior to filling out the application. If a jury finds that Ms. Bramm was diagnosed with lymphoma only once, in September 2010, then her diagnosis would not have occurred within the 24-month time frame. Based on these facts, a reasonable jury could find that Ms. Bramm answered the question correctly and did not make a false representation on her policy application.

Moreover, even assuming that the statement was indeed false, a jury could still find that Ms. Bramm neither knew nor had reason to know that the statement was false. The question of what Ms. Bram should have known is an objective test. *La Plant*, 2013 WL 3341054, at *2. As discussed above, the parties' arguments show the two competing interpretations as to whether Ms. Bramm was "diagnosed" with cancer within the relevant 24-month time period. Given these interpretations, a reasonable jury could find that Ms.

Bramm misunderstood the question and had no reason to believe she answered it incorrectly. Although Royal Neighbors argues Ms. Bramm should have known the answer was false in light of her training as a nurse, no facts in the record support provide guidance as to how a nurse would interpret the term "diagnosed" as opposed to a lay person.

Additionally, the parties dispute material facts regarding Ms. Bramm answering the application questions. Bridget Radmer testified that she was present in the room with Ms. Bramm and the insurance agent, Reilly. Ms. Radmer maintains that Ms. Bramm told Reilly about her cancer diagnosis more than 24 months before the application date, and that Reilly still instructed Ms. Bramm to answer the question "no." In contrast, Royal Neighbors maintains that Ms. Radmer was not in the room with her mother and further maintains that Ms. Bramm made no mention of lymphoma during the conversation. (PPFF ¶¶ 10, 12 and Def's Responses). When taking the facts in the light most favorable to the Radmers, a jury could easily conclude that, from Ms. Bramm's perspective at least, she had no reason to answer "yes" to the question about receiving a cancer diagnosis within the last 24 months.

In sum, the Court finds that summary judgment is inappropriate on the breach of contract claim. Based on the record before the Court, and taking all inferences in favor of the non-moving party, there are genuine issues of material fact that require resolution at trial by a fact-finder. A reasonable jury could find that Ms. Bramm did not make a false statement on her application or that she did not have reason to know that the answer was false. Thus, the Court will deny Royal Neighbors' motion for summary judgment as to the breach of contract claim.

### 3.2 Bad Faith Claim

The tort of bad faith is a separate intentional wrong which results from a breach of a duty imposed by a contractual relationship. *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 687, 271 N.W.2d 368 (1978). It is not a tortious breach of contract. *Id.* The Wisconsin Supreme Court has recognized bad faith claims to help "redress a bargaining power imbalance between parties to an insurance contract." *McEvoy v. Group Health Coop. of Eau Claire*, 213 Wis.2d 507, 518, 570 N.W.2d 397, 402 (1997).

To recover on a claim for bad faith, a plaintiff must prove: (1) "the absence of a reasonable basis for denying benefits"; and (2) the insurance company's "knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691. If the duty to pay is "fairly debatable," that is, if the company has investigated and developed the facts necessary to evaluate the claim, and has not recklessly ignored or disregarded the facts necessary to evaluate the claim, the company is entitled to argue that its decision to deny benefits is fairly debatable. *Id.* However, if the company knowingly fails "to exercise an honest and informed judgment," such failure "constitutes the tort of bad faith." *Id.* at 692.

Royal Neighbors asserts that the decision to deny the claim was fairly debatable. Its primary support for this is the *Hejsak* case. *Hejsak v. Great-West Life & Annuity Ins. Co.*, 331 F. Supp. 2d 756 (W.D. Wis. 2004). There, the insured answered "no" to a question on the insurance application asking whether he had a central nervous system disorder. *Id.* at 758-59. Upon the insured's death, the insurer denied the claim for coverage because the medical records revealed that he had been diagnosed as "'physically disabled by spinal damage at multiple levels,' [and required] 'ongoing and regularly scheduled medical care for multiple medical problems.'" *Id.* at 759. The

parties disputed whether this diagnosis fell within the definition of a "central nervous system disorder." *Id.* at 762-65. The court agreed with the insurer that the "discussion of spinal damage in Hejsak's medical records suggests that it had a reasonable basis" to deny the claim. *Id.* at 766. The court found that "[a]lthough a reasonable person may not view his back injury as a 'central nervous system disorder[,]' …another reasonable person working for the insurer might view it as such." *Id.* at 767.

Here, Royal Neighbors is entitled to summary judgment on the bad faith claim because the Radmers cannot prove the absence of a reasonable basis for denying the claim. As discussed at length above, two competing interpretations exist as to whether Ms. Bramm was diagnosed with cancer within the 24-month time period prior to applying for insurance. Although a jury may ultimately find a breach of contract, Royal Neighbors has put forth a reasonable basis for denying the insurance claim. It is undisputed that Ms. Bramm visited her oncologist 5 times during the relevant 24-month time period. It is further undisputed that during these visits, Ms. Bramm's treating physicians noted "Diagnosis: Lymphoplasmacytic lymphoma/Waldenstrom's macroglobulinemia" in her medical records. (DPFF ¶¶ 8-11). As such, the undisputed facts show that it was reasonable for Royal Neighbors to believe that Ms. Bramm knew or should have known that she had been diagnosed with cancer during the relevant 24-month time period. Finally, although the Radmers argue that Royal Neighbors failed to properly investigate the claim, the record does not support this assertion. The Radmers allege a poor investigation because Royal Neighbors failed to inquire about whether Reilly instructed Ms. Bramm to answer the relevant question "no." However, Royal Neighbors received this information in November 2014, which was *after*

Royal Neighbors had already denied the Radmers' claim. Thus, this alleged poor investigation cannot support a claim for bad faith denial of the claim.

The Court finds that the Radmers cannot meet their burden to show that Royal Neighbors acted in bad faith. *See Anderson*, 85 Wis.2d at 692, 271 N.W.2d at 377 (*insured* must establish that there was no reasonable basis for denying the claim under objective standard). Thus, the Court will grant Royal Neighbors' motion as to the bad faith claim.

4. CONCLUSION

In sum, the Court finds that: (1) material issues of fact preclude summary judgment on the breach of contract claim; and (2) Royal Neighbors is entitled to summary judgment on the bad faith claim. As such, the Court will deny Royal Neighbors' motion for summary judgment on the breach of contract claim and grant the motion on the bad faith claim, and this matter will proceed to trial.

Accordingly,

IT IS ORDERED that Royal Neighbors' motion for summary judgment (Docket #17) be and the same is hereby DENIED in part and GRANTED in part as more thoroughly described above; and

IT IS FURTHER ORDERED that the Radmers' motion to file a surreply (Docket #30) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 12th day of August, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge